UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
Maria Laurette Dussault, Individually And On
Behalf Of All Others Similarly Situated,

                              Plaintiff,

v.

Republic of Argentina,

                              Defendant

------------------------------------------------------------x

CV ( )

**CLASS ACTION COMPLAINT**

Plaintiff Maria Laurette Dussault, by her attorneys, alleges as follows in this class action complaint against the Republic of Argentina:

## I. PARTIES

1. Plaintiff Maria Laurette Dussault owns beneficial interests in three bonds subject to U.S. jurisdiction that were issued by Argentina but upon which Argentina has refused to pay interest or principal, causing monetary damages to Plaintiff and class members: (a) bonds with International Securities Identification Number ("ISIN") DX0070531420, maturity date of November 5, 2003, and coupon rate of 11 percent ("2003 Bond"); (b) bonds with ISIN DX0105694789, maturity date of January 7, 2005, and coupon rate of 10 percent ("2005 Bond"); bonds with ISIN DX0124528703, maturity date of February 22, 2007, and coupon rate of 10 percent ("2007 Bond").

2. Defendant Argentina is a sovereign nation as defined in 28 U.S.C. § 1603(a).

## II. JURISDICTION AND VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f) and pursuant to certain contractual terms governing the Bonds.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1330 and 1367. Because Argentina expressly waived sovereign immunity to permit jurisdiction in this Court for bonds issued under the Euro Medium-Term Note Programme ("Euro MTN

Programme"), all of Plaintiff's three bonds issued under the Euro MTN Programme are subject to the jurisdiction of this Court. *Lavaggi v. Republic of Argentina,* No. 04-CIV-5068, slip op. at 3 (S.D.N.Y. Aug. 25, 2005) (finding bonds issued under European MTNote Programme governed by Trust Deed of July 27, 1993 which provides for NYC jurisdiction); *see also* Trust Deed § 17.4 ("the Republic irrevocably agrees not to claim and irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction").

5. This Court has personal jurisdiction over the Republic pursuant to contract documents governing the Bonds, including the Trust Deed of July 27, 1993 ("Trust Deed"). *See* Trust Deed § 17.2 ("The Republic irrevocably submits to the jurisdiction of…any New York State or Federal court sitting in the Borough of Manhattan, New York City"). Argentina satisfies the minimum contacts test for personal jurisdiction because these Bonds have been traded in New York. Thereby, "Argentina 'purposefully avail[ed] itself of the privilege of conducting activities within the [United States].'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992).

6. Argentina appointed Banco de la Nación Argentina, 225 Park Avenue, New York, NY 10169, as its agent for service of process. *See* 1994 FAA § 22.

### III. STATEMENT OF FACTS

7. As economic growth slowed in 1998, Argentina and its investment bankers sought retail investors to raise capital.

8. These retail investors included Plaintiff, class members, and hundreds of thousands of small investors in the United States and Europe. Argentina counted on the preference of these investors for fixed income investments.

9. From 1998 to 2001, Argentina issued roughly $88 billion in bonds, in aggregate, including bonds issued to Plaintiff and members of the class.

10. Argentina issued 500 million Lira of the 2003 Bond.

11 Argentina issued 650 million Euros of the 2005 Bond.

12. Argentina issued 500 million Euros of the 2007 Bond.

13. Plaintiff made the following purchases of 2003 Bonds from Argentina: (a) roughly 450,000,000 Italian Lira worth on November 6, 2001; (b) roughly 395,000,000 million Lira worth on November 9, 2001; (c) roughly 550,000,000 million Lira worth on November 10, 2001; (d) roughly 650,000,000 Lira worth on November 16, 2001. Plaintiff still possesses all of these bonds or beneficial interests in these bonds.

14. Plaintiff made the following purchases of 2005 bonds from Argentina: (a) roughly 250,000 Euros worth on November 15, 2001; (b) roughly 170,000 Euros worth on November 20, 2001; (c) roughly 225,000 Euros worth on November 30, 2001. Plaintiff still possesses all of these bonds or beneficial interests in these bonds.

15. Plaintiff made the following purchases of 2007 Bonds from Argentina: (a) roughly 300,000 Euros worth on October 22, 2001; (b) roughly 200,000 Euros worth on October 22, 2001; (c) roughly 150,000 Euros worth on October 29, 2001; (d) roughly 450,000 Euros worth on November 20, 2001; (e) roughly 280,000 Euros worth on November 26, 2001; (f) roughly 300,000 Euros worth on November 28, 2001   Plaintiff still possesses all of these bonds or beneficial interests in these bonds.

16. The 2003 Bonds, 2005 Bonds, and 2007 Bonds were all issued under, and are characterized as part of, the Euro MTN Programme. The contractual terms of the Euro MTN Programme – including those written into the Trust Deed – govern these bonds.

17. The Bonds issued by Argentina to Plaintiff and members of the class contain a contractual promise that Argentina calls a "Covenant to Pay." Trust Deed § 2.2.

18. The contractual terms governing Plaintiff and class members' bonds clarify that a "default" affects all class members equally:

> If it is proved that as regards any specified Note or Coupon the Republic has made default in paying any sum due to the relevant Noteholder such proof will (unless the contrary be proved) be sufficient evidence that it has made the same default as regards all other Notes or Coupons which are then payable.

Trust Deed § 10.2. Such a "default" has occurred in relation to Plaintiff and class members' Bonds as well as other bonds issued by Argentina.

19. Argentina promised to pay interest in the "Event of Default"

> If any Series of Floating Rate Notes become immediately repayable pursuant to Condition 10 [i.e., default], the rate of interest and interest amounts in respect of them shall continue to be calculated in accordance with the Conditions until all such Floating Rate Notes shall have been repaid, except that the rates of interest and interest amounts need not be published.

Trust Deed § 2.6.

20. The Notes of Plaintiff and class members' Bonds carry the "Authorized Signature" of "La Greca," as signed by the Argentine Minister of Finance, Noemi E.C. La Greca, and as required by the Trust Deed of July 27, 1993. *See* Trust Deed § 3.2 ("The Bearer Notes, the Coupons, the Talons and the Definitive Registered Notes will be signed manually or in facsimile by a duly authorized person designated by the Republic").

21. Plaintiff and class members' bonds contain the promise repeated throughout that "Principal and interest on the Bonds are payable by Argentina ...." These promises are written into the Trust Deed of July 27, 1993

22. On December 23, 2001, in breach of its promise to pay principal and interest to Plaintiff and class members, Argentina declared a default. This constitutes a breach of the "Covenant to Pay" and other contractual promises made by Argentina.

23. Since its default, Argentina has steadfastly refused to pay on the Bonds, and Argentina has tried to force Plaintiff and class members to accept a fraction of what they are due through inadequate settlement offers. *See e.g.* Michael Casey, ASIAN WALL ST. JOURNAL M7 (Feb. 22, 2005) ("Argentina has offered holders of its defaulted national bonds only 30 cents on the dollar – about half what other nations have offered when they defaulted – and stuck with that offer despite criticism that the country could afford to pay more. Rather than buckle, Argentina recently enacted a law prohibiting itself from ever making a new offer").

24. On or about April 25, 2002, Argentina issued a resolution officially postponing payment of debt to all investors, including Plaintiff and class members, and Argentina has accordingly made no payments on its bonds.

In February 2005, the legislature of Argentina passed a law prohibiting the Republic from negotiating with bondholders seeking payment for their contractual claims. *See e.g.* Manuela Badaway, REUTERS NEWS (March 11, 2005) ("Argentina passed a law in February prohibiting the government from reopening the debt swap offer that expired on Feb. 25 and from negotiating other terms in any legal cases connected with the debt in question").

26. Plaintiff and class members held 2003 Bonds, 2005 Bonds, and 2007 Bonds or beneficial interests in these bonds on December 23, 2001, or thereafter, and they still hold these bonds or beneficial interests in these bonds. Accordingly, Plaintiff and class members have been injured by Argentina's default.

### IV.   CLASS ACTION ALLEGATIONS

27. This lawsuit is brought as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). The class is defined as follows:

> All persons who, on December 23, 2001 or thereafter, owned and still own the following three bonds or beneficial interests in bonds issued by Argentina: (a) ISIN DX0070531420 (b) ISIN DX0105694789, and (c) ISIN DX0124528703.

28. This action is properly brought as a class action:

29. The members of the class are so numerous that joinder is impracticable. While the exact number of class members is unknown at present, the class likely consists of thousands of investors. Argentina issued roughly billions of Lira and Euros worth of Plaintiff's bonds.

Plaintiff's claims are typical of the claims of all other members of the class because he and members of the class suffered economic damages as the result of the same default by Argentina.

Plaintiff will fairly and adequately protect the interests of class members. Plaintiff has retained competent counsel with experience in complex litigation and international litigation. Plaintiff's interests are not antagonistic to those of other class members. Plaintiff has significant experience in negotiations and investments. Plaintiff will seek to identify class members through records produced by Argentina and her agents, including brokerage firms, transfer agents, trustee, or other entities.

Because joinder is impracticable, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff cannot ascertain any difficulties that would preclude maintenance of this lawsuit as a class action.

33.   Questions of law and fact common to the members of the class predominate over any questions that may affect individual members, because Argentina's default was generally applicable and similarly affected class members. There are significant common questions of fact and law, including:

(1)   Whether Argentina's declaration, on or around December 23, 2001, constituted a "default" or breach of the "Covenant to Pay" according to the legal terms of Plaintiff's contract documents;

(2)   Whether Argentina's passing of a law in February 2005 that prohibited Argentina from negotiating with bondholders seeking payment for their contractual claims constituted a "default" or breach of the "Covenant to Pay";

(3)   Whether Argentina's failure to pay principal and interest when due and payable constituted a "default" or breach of the "Covenant to Pay";

(4)   Whether Argentina's failure to pay principal when due and payable on over $30 million worth of bonds when due and payable for more than the period of grace constitutes a "default" or a breach of the "Covenant to Pay";

(5)   Whether Plaintiff and class members sustained damages as the result of Argentina's default;

(6)   The appropriate measure for computing and awarding principal and interest to Plaintiff and class members;

(7)   Whether Argentina waived sovereign immunity in the express terms of the documents governing these Bonds.

## V. BREACH OF CONTRACT

Plaintiff brings this lawsuit against Argentina for breach of contractual obligations to Plaintiff and class members.

Pursuant to the Trust Deed of July 27, 1993 and other documents setting forth the terms and conditions of the bonds, Argentina issued billions of Lira and Euros worth of Bonds to Plaintiff and class members.

36. Pursuant to documents governing these Bonds that form the basis for this action, Argentina's failure to pay principal and interest when due and payable constitutes a "default" and a breach of the "Covenant to Pay."

37. On or about December 23, 2001, Argentina declared a moratorium on the payment of principal and interest with respect to all of its foreign debt. Since making that declaration, Argentina has failed to make any payment of principal or interest to Plaintiff or class members.

38. Argentina's declaration of moratorium on payment of principal or interest constitutes a "default" and breach of the "Covenant to Pay."

39. On or about April 25, 2002, Argentina issued a resolution officially postponing payment of debt to all investors, including Plaintiff and class members, and Argentina has accordingly made no payments on its bonds.

40. Argentina's failure to pay principal when due and payable constitutes a "default" and breach of the "Covenant to Pay."

41. By reason of the foregoing, Argentina has breached its contractual obligations to Plaintiff and class members and, accordingly, Argentina is liable to Plaintiff and class members for damages in an amount to be determined by the trier of fact.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

   A.   An order certifying the class, as set forth herein, and designating Plaintiff as the class representative and his legal counsel as class counsel;

   B.   A judgment awarding compensation to Plaintiff and class members for the damages that they have sustained as a result of Argentina's breaches of the agreements governing these Bonds;

   C.   A judgment awarding Plaintiff's reasonable attorneys' fees, experts' fees, interest and cost of suit; and

   D.   Such other and further relief as this Court may deem just.

DATED: November 9, 2006
       New York, New York

By _____
Andrea Boggio (AB-0564)
Attorney at Law
1150 Douglas Pike
Smithfield, RI 02917
Telephone: (401) 232-6455
boggio@stanfordalumni.org

Attorney for Maria Laurette Dussault