UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIE LAURETTE DUSSAULT,

Plaintiff,

-against-

THE REPUBLIC OF ARGENTINA

Defendant.

No. 02-CV-13085 (TPG)(GWG)

**NON-PARTIES EURO BONDHOLDERS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TURNOVER ORDER AGAINST THE BANK OF NEW YORK MELLON**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....... 1

FACTS ....... 2

ARGUMENT ....... 5

I. Matters Relating to Payments Made Under The Euro Bonds Must be Decided Under English Law and by an English Court ....... 5

II. The Funds Are Not Subject to Turnover Because They Are Not Argentina's Property ....... 6

A. The Funds Belong to the Exchange Bondholders ....... 6

B. The Funds Are Not Subject to Turnover Under English Law ....... 8

C. The Funds Are Not Subject to Turnover Under New York Law ....... 9

CONCLUSION ....... 11

## TABLE OF AUTHORITIES

**Page**

### CASES

*Hanrahan v. Albany Cnty. Prob. Dep't*,
508 N.Y.S.2d 283 (1986) .......... 10

*Indosuez Int'l Fin., B.V. v. National Reserve Bank*,
304 AD2d 429, 758 N.Y.S.2d 308 (1st Dep't 2003) .......... 6

*NML Capital, Ltd. v. Republic of Arg.*,
699 F.3d 246 (2d Cir. 2012) .......... 10

*NML Capital, Ltd. v. Republic of Argentina*,
No. 08 Civ. 6978 (TPG), 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012) .......... 2, 8

*Roby v. Corporation of Lloyd's*,
996 F.2d 1353 (2d Cir. 1993) .......... 5

*Swezey v. Lynch*,
926 N.Y.S.2d 415 (2011) *aff'd sub nom. Swezey v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 973 N.E.2d 703 (2012) .......... 10

### STATUTES

N.Y. CPLR 5225(b) .......... 5, 6, 9

### OTHER AUTHORITIES

Green v Russell v McCarthy (Third Party),
[1959] 2 Q.B. 226 .......... 9

LEWIN ON TRUSTS, 18th edition, Thomson Sweet & Maxwell 2008 .......... 9

Siegel, N.Y. Prac. 5th ed. § 488 .......... 9

SNELL'S EQUITY, 32nd edition, Thomson Sweet & Maxwell 2010 .......... 9

The Euro Bondholders,[1] interested non-parties, respectfully submit this memorandum of law in support of their opposition to the motions for turnover orders (the "Turnover Motions") filed by the plaintiffs in *Applestein et al. v. Republic of Argentina*, No. 02-cv-04124-TPG and certain related actions[2] (collectively, the "Applestein Plaintiffs"), and the plaintiff in *Dussault v. Republic of Argentina*, No. 06-cv-13085-TPG (the "Dussault Plaintiff" and, together with the Applestein Plaintiffs, "Plaintiffs").

**PRELIMINARY STATEMENT**

The Turnover Motions are based on the flawed premise that the funds subject to the motions, which are held by the Bank of New York Mellon ("BNY Mellon"), belong to the Republic of Argentina ("Argentina" or the "Republic") and are thus reachable by Plaintiffs as judgment creditors of the Republic. That is manifestly wrong. The Republic transferred those funds to BNY Mellon in BNY Mellon's capacity as trustee for the beneficial holders of certain Argentine sovereign bonds, including the Euro Bondholders. The plain terms of the Indenture for the Euro Bonds – which is governed by English law – state that once the Republic remits funds for payment under the bonds, "the Republic shall have no interest whatsoever in such amounts." Ex. 1, § 3.5(a).[3] Because the funds are the property of third parties, and not the property of Argentina, they cannot be turned over to Plaintiffs. Pursuant to the Indenture and English law (or even New York law, on which Plaintiffs misguidedly base their arguments), the Turnover Motions are frivolous and must be denied.

---

[1] The Euro Bondholders are Knighthead Capital Management, LLC, Perry Capital LLC, Monarch Master Funding 2 (Luxembourg) S.à r.l., QVT Fund IV LP, QVT Fund V LP, Quintessence Fund LP, and Centerbridge Partners LP (each on behalf of itself or one or more investment funds or accounts managed or advised by it).

[2] The captions to the present opposition provide a complete list of those actions.

[3] "Ex." refers to documents exhibited to the Declaration of Christopher J. Clark, executed and filed together with this Memorandum.

## FACTS[4]

On February 23, 2012 and November 21, 2012, this Court entered injunctions (the "Injunctions") enjoining the Republic from making payments on bonds issued by the Republic pursuant to 2005 and 2010 exchange offers (the "Exchange Bonds"), unless it simultaneously made "ratable payments" to certain plaintiff holdout creditors (the "Holdout Bondholders") who elected not to exchange their bonds. *See generally NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012), *aff'd* 727 F.3d 230 (2d Cir. 2013).

The Euro Bondholders are a group of investors that hold euro-denominated Exchange Bonds (the "Euro Bonds") issued by the Republic pursuant to a June 2, 2005 Indenture, as supplemented on April 30, 2010 (the "Indenture"). The Indenture, entered into between the Republic and BNY Mellon as Indenture Trustee, authorizes the issuance of bonds by the Republic and governs the administration of those bonds. Ex. 1, Recitals ¶ 1. Certain terms of the bonds issued pursuant to the Indenture, such as their currency denomination and their governing law, are further specified in the securities (the "Securities") executed by the Republic in connection with each issuance. *See* Ex. 1, § 2.1(c).[5] The Euro Bonds held by the Euro Bondholders are governed by the laws of England and Wales. *See* Ex. 2, R-14, ¶ 17; Ex. 1, § 12.7.[6]

---

[4] The Euro Bondholders presume the Court is familiar with the background of this case and will not recite them in full here; only the facts salient to the Turnover Motions and the present opposition are summarized for the Court's convenience.

[5] Ex. 2 provides a representative example of the securities executed by the Republic for the bonds held by the Euro Bondholders.

[6] The Indenture contemplates that the Indenture itself and the bonds issued pursuant to its terms would be governed by the laws of New York or the laws of England and Wales. *See* Ex. 1, § 12.7. The securities for the bonds held by the Euro Bondholders specify they are governed by English law. *See, e.g.*, Ex. 2, R-14, ¶ 17 ("This Security shall be governed by and construed in accordance with the laws of England and Wales without regard to principles of conflicts of laws . . . ."). Pursuant to the Indenture, with respect to bonds governed by English law, the "Indenture

The Republic remits payments owed under the Exchange Bonds, including the Euro Bonds, to BNY Mellon in its capacity as Indenture Trustee. Ex. 1, § 3.5(a); Ex. 2, R-2-R-3, ¶ 2. As the Indenture and the face of the Securities make clear, once the Republic makes a payment to the Euro Bondholders pursuant to the bonds, it no longer has any interest in the funds remitted for payment:

(a) Under Section 3.1 of the Indenture, when the Republic makes the required payment, "[a]ll monies . . . shall be held by [the Trustee] ***in trust for itself and the Holders*** . . . " Ex. 1, § 3.1. (Emphasis added).

(b) Under Section 3.5(a) of the Indenture, pending the Trustee's application of funds paid by the Republic to the bondholders' accounts, "such amounts shall be held in trust by the Trustee ***for the exclusive benefit of the Trustee and the Holders*** . . . and ***the Republic shall have no interest whatsoever in such amounts***." Ex. 1, § 3.5(a). (Emphasis added).

(c) Under Section 5.5. of the Indenture, "[a]ll monies received by the Trustee shall until used or applied in accordance with this Indenture . . . ***be held in trust for the Trustee, each agent or Appointee of the Trustee and the Holders***. . ." Ex. 1, § 5.5. (Emphasis added).

(d) Under the Securities, all funds paid by the Republic to the Trustee "***shall be held by it in trust exclusively for [the Trustee] and the Holders of the Securities*** . . . and ***the Holders of the Securities may . . . look only to the Trustee for any payment*** to which the Holders may be entitled." Ex. 2, R-3, ¶ 2(e). (Emphasis added).

On June 26, 2014, the Republic made two deposits into certain Bank of New York accounts at Banco Central de la Republica Argentina ("Banco Central"), respectively for €225,852,475.66 (the "Euro Funds") and $230,922,521.14 (together with the Euro Funds, the "Funds"), for the purpose of making a coupon payment to the holders of the Exchange Bonds. Ex. 3, 12:7-13:12.[7] The first payment, in euros, was made pursuant to the Republic's euro-

---

and such [bonds] shall be governed by and construed in accordance with the laws of England & Wales without regard to principles of conflicts of laws . . . ." Ex. 1, § 12.7.

[7] The Euro Bondholders have requested that BNY Mellon provide documents showing which Bank of New York entity owns the accounts in which the Funds were deposited, and reserve the right to amend this memorandum if new facts bearing on the ownership of the accounts are revealed.

denominated Exchange Bonds, including those held by the Euro Bondholders. The second payment, made in U.S. dollars, was made pursuant to the Republic's USD-denominated Exchange Bonds. On August 6, 2014, the Court issued an order resolving that the Republic's payment violated the Injunctions and ordering BNY Mellon to refrain from making any payments to the holders of the Exchange Bonds and to retain the funds in its accounts at Banco Central. Ex. 4, ¶¶ 1-2.

As described above, under the terms of the Indenture and the Securities, BNY Mellon is now holding the Funds in trust for the benefit of the holders of the Exchange Bonds and BNY Mellon itself (which has certain limited property interest in the payments). The Republic no longer has any property rights to the Funds. Ex. 1, §§ 3.1, 3.5(a), 5.5; Ex. 2, R-3, ¶ 2(e).

In accordance with the terms of the Indenture and the Securities, BNY Mellon has repeatedly stated it is holding the Funds in trust solely for the benefit of the Exchange Bondholders and for its own benefit. *See*, *e.g.*, Ex. 3, 14:20-22 ("the money under the indenture is ***held in trust for the Bank of New York Mellon as trustee and the bondholders***"; Ex. 5 at 2 (describing the Funds as "funds that it holds in trust (for itself and the Exchange Holders)"); Ex. 6, ¶ 72 in discussing the Turnover Motions, stating that BNY Mellon "believes the [Plaintiffs'] arguments are doubtful ***because under the terms of the Indenture the Republic expressly has no interest in the Euro funds and those funds are held by the Trustee for itself and for its beneficiaries***") (emphasis added); *id.* at ¶ 11(a)(iv) (noting that, with respect to the Funds, BNY Mellon "sought to ensure that the Euro Funds held by the Trustee on its behalf and on behalf of the Euro Bondholders remained in the Trustee's possession rather than being returned to the Republic").

On August 7, 2014 and August 18, 2014, Plaintiffs filed their respective Turnover Motions against BNY Mellon. Both motions identify Plaintiffs as Holdout Bondholders currently holding judgments against the Republic for unpaid amounts under non-Exchange Bonds. *Applestein*, No. 02-cv-04124-TPG, Dkt. # 132 at 1-2; *Dussault*, No. 06-cv-13085-TPG, Dkt. # 63 at 2. Plaintiffs claim the Republic has a property interest in the Funds and BNY Mellon must turn them over to Plaintiffs in their capacity as judgment creditors of the Republic pursuant to N.Y. CPLR 5225(b). *Applestein*, No. 02-cv-04124-TPG, Dkt. #132 at 6-7; *Dussault*, No. 06-cv-13085-TPG, Dkt. # 63 at 5-6.

**ARGUMENT**

## I. MATTERS RELATING TO PAYMENTS MADE UNDER THE EURO BONDS MUST BE DECIDED UNDER ENGLISH LAW AND BY AN ENGLISH COURT

As an initial matter, Plaintiffs' Turnover Motions are deficient in that they fail to address English law, which is the law that must be applied to determine ownership over and turnover of the Euro Funds. It is undisputed Argentina placed the Funds in certain Bank of New York bank accounts at Banco Central for the benefit of the Exchange Bondholders, including the Euro Bondholders, pursuant to its obligations under the Indenture and the Securities. Ex. 3, 14:20-22. It is also undisputed the Indenture and the Securities expressly address the Republic's, the Trustee's, and the investors' respective interests in and ownership of the payments made by the Republic under the Exchange Bonds. Ex. 1, §§ 3.1, 3.5(a), 5.5; Ex. 2, R-2-R-3. Finally, it is undisputed that with respect to euro-denominated bonds, the Indenture and the Securities are governed by English law. *See* Ex. 1, § 12.7. Accordingly, the issue of the parties' respective interests in the Euro Funds, and whether those funds may be subject to turnover – which they are not – must be decided under English law. *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993) (holding that absent certain exceptions, none of which are applicable here,

choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character); *Indosuez Int'l Fin., B.V. v. Nat'l Reserve Bank*, 304 A.D.2d 429, 430, 758 N.Y.S.2d 308 (1st Dep't 2003) (noting New York's policy of enforcing choice of law clauses). However, Plaintiffs have not even attempted to explain why they are entitled to turnover of those funds under English law, and have not even referenced English law in their Turnover Motions.[8]

Furthermore, because the respective rights of BNY Mellon, the Euro Bondholders, and the Republic with respect to the Euro Funds must be decided under English law, the proper forum for adjudicating any such matters are the English courts. Again, it is undisputed the Turnover Motions concern, at least in part, a euro-denominated payment of funds which are currently held in a trust governed by English law. Ex. 3, 14:20-22; Ex. 1, § 12.7. It is also undisputed that once BNY Mellon releases those funds from its accounts at Banco Central, they will be transferred through European entities until ultimately distributed to their beneficial holders, in a payment process that does not involve the U.S. at all. Ex. 7, ¶ 10. In these circumstances, the proper forum for adjudicating any claims relating to those funds, including claims for turnover, are the English courts.[9]

## II. THE FUNDS ARE NOT SUBJECT TO TURNOVER BECAUSE THEY ARE NOT ARGENTINA'S PROPERTY

### A. The Funds Belong to the Exchange Bondholders

The Court need not even refer to the law of any particular jurisdiction in order to determine the Funds are not subject to turnover under N.Y. CPLR 5225(b). The Indenture and the Securities are clear on their face that the Funds do not belong to the Republic but are the

---

[8] This deficiency is unsurprising since English law precludes turnover of the Euro Funds to Plaintiffs.

[9] Indeed, certain Exchange Bondholders have initiated an action against BNY Mellon in England, seeking an order requiring BNY Mellon to transfer these funds.

property of the beneficial holders of the Exchange Bonds. Indeed, by failing to transfer these amounts to the bondholders, BNY Mellon is already in breach of its obligations as Indenture Trustee.

The Indenture and the Securities cannot be any more clear that all payments remitted by the Republic under the bonds are held by BNY Mellon "***for the exclusive benefit of the Trustee and the Holders*** . . . and ***the Republic shall have no interest whatsoever in such amounts***." Ex. 1, § 3.5(a). (Emphasis added). *See also id.*, § 3.1 (BNY Mellon holds the payments "in trust for itself and the Holders"); *id.*, § 5.5 (same); Ex. 2, R-3, ¶ 2(e) (once the Republic makes a payment under the bonds, the bondholders "may . . . look only to the Trustee for any payment to which the Holders may be entitled." Ex. 2, R-3, ¶ 2(e).

Consistent with these unambiguous contractual provisions, BNY Mellon has repeatedly stated before this Court and others that it is holding payments received from the Republic under the Exchange Bonds – including the Funds subject to the Turnover Motions – in trust for the benefit of the bonds' beneficial holders. In describing the Funds to the Court on June 27, 2014, counsel for BNY Mellon unequivocally stated that, "the money under the indenture is ***held in trust for the Bank of New York Mellon as trustee and the bondholders***." Ex. 3, 14:20-22. (Emphasis added). Likewise, in proceedings relating to the Injunctions in England, BNY Mellon has noted Plaintiffs' arguments are doubtful because "***under the terms of the Indenture the Republic expressly has no interest in the Euro funds and those funds are held by the Trustee for itself and for its beneficiaries***." Ex. 6, ¶ 72. (Emphasis added). *See also* Ex. 5 at 2 (describing the Funds as "funds that it holds in trust (for itself and the Exchange Holders)").

Plaintiffs respond to the unambiguous terms of the Indenture and the securities, and the unambiguous statements by BNY Mellon, with conclusory, unsupported, and incorrect

statements claiming BNY Mellon holds the funds *for the Republic*. The Dussault Plaintiff goes as far as to assert that "it is undisputed that [BNY Mellon] holds funds on behalf of the Republic, as represented by [BNY Mellon's] counsel to this Court while seeking guidance concerning what actions should be taken with such funds." *Dussault*, No. 06-cv-13085-TPG, Dkt. # 63 at 6. Not only is this proposition in dispute, but, as described above, it is also the opposite of what BNY Mellon told the Court – that the Funds are "***held in trust for the Bank of New York Mellon as trustee and the bondholders***" (which is perhaps why the Dussault Plaintiff fails to cite any authority for her remarkable assertion). Ex. 3, 14:20-22. (Emphasis added). Likewise, citing to BNY Mellon's motion for clarification in *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), Dkt. # 578, the Applestein Plaintiffs claim that "BNY Mellon . . . has clearly stated that it does not have any claim to the [Funds]." *Applestein*, No. 02-cv-04124-TPG, Dkt. #132 at 6. A review of the motion, however, reveals that BNY Mellon expressly states the contrary: that it is holding the Funds "***in trust (for itself and the Exchange Holders)***" and that "return of the Funds [to the Republic] would work a deprivation of ***the Trustee's own property rights derived from the Indenture***." Ex. 5 at 2, 11. (Emphasis added). Plaintiffs' remarkably disingenuous statements only serve to underscore the frivolity of their Turnover Motions.

**B. <u>The Funds Are Not Subject to Turnover Under English Law</u>**

Under English law, the Euro Bondholders have a proprietary interest in the Euro Funds, which are not subject to turnover to Plaintiffs. It is fundamental, long-standing and settled English law that the beneficiary of a trust "***has his own equitable title to exclude third parties from interfering with trust property***." Ex. 8, § 2-003. (Emphasis added). *See also* Ex. 9, § 1-06 ("the proprietary nature, in the wide sense, of a beneficiary's rights, is at the heart of the proprietary remedy which can be asserted against trustees and others into whose hands trust property can be followed or traced").

Indeed, turning over the Euro Funds to Plaintiffs would expose BNY Mellon to liability for breach of its obligations as Trustee under the Indenture, as English law mandates that "[a]ny act or neglect on the part of a trustee ***which is not authorized or excused by the terms of the trust instrument, or by law, is called a breach of trust***." Ex. 10 at 241.[10] Accordingly, under English law, BNY Mellon's turnover of the Euro Funds to Plaintiffs is not only unwarranted, it is also unlawful.

**C. The Funds Are Not Subject to Turnover Under New York Law**

Even if the Court were to apply New York law to decide the Turnover Motions – which would be erroneous and contrary to the plain language of the Indenture and the Securities – the Turnover Motions still fail. N.Y. CPLR § 5225(b), on which Plaintiffs rely, permits turnover of a judgment debtor's property held by a third party to a judgment creditor only if the judgment debtor maintains an interest in the funds or is "entitled to the possession of such property,"[11] or if the judgment creditor's rights are superior to the rights of the party holding the property. N.Y. CPLR 5225(b). Neither is true here.

***First***, under the unambiguous terms of the Indenture, "the Republic shall have no interest whatsoever" in payments made under the Exchange Bonds and BNY Mellon holds "[a]ll monies . . . in trust for itself and the holders." Ex. 1, §§ 3.1, 3.5(a). (Emphasis added). New York law also mandates that once a judgment debtor surrenders the money to a third-party transferee, the debtor "los[es] any interest in said money" and "no longer ha[s] any rights to assign or transfer"

---

[10] In fact, BNY Mellon is already in breach of its obligations as Trustee under English law for failing to transfer the Euro Funds to the beneficial holders of the euro-denominated Exchange Bonds.

[11] Under New York law, a judgment creditor "stands in no better position with respect to property of the garnishee than does his debtor." *Swezey v. Lynch*, 87 A.D.3d 119,127, 926 N.Y.S.2d 415, 419 (2011) *aff'd sub nom. Swezey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 973 N.E.2d 703 (2012). In other words, "if a given property, asset, interest, or deposit is unavailable to the debtor, it is unavailable to the creditor." Siegel, N.Y. Prac. 5th ed. § 488.

the funds. *Hanrahan v. Albany Cnty. Prob. Dep't*, 119 A.D. 334, 336, 508 N.Y.S.2d 283, 284 (1986).

***Second***, the Republic is no longer entitled to possession of the Funds. Again, under the plain terms of the Indenture and the securities, the Funds are held in trust "for the exclusive benefit" of BNY Mellon and the Euro Bondholders." Ex. 1, §§ 3.1, 3.5(a). Indeed, while this Court was initially inclined to order BNY Mellon to return the Funds to the Republic, Ex. 3, 33:7-16, BNY Mellon immediately filed multiple submissions indicating such return would subject BNY Mellon to liability under the Indenture. Ex. 5 st 7-8; Ex. 11 at 1-2. Accordingly, the Court's ultimate order issued on August 6, 2014 only directed BNY Mellon to ***retain*** the Funds – but ***not*** to ***return*** them to the Republic, which would violate the terms of the Indenture.[12] Ex. 4, 2.

***Finally***, Plaintiffs have failed to demonstrate their rights to the Funds are superior to the rights of the party holding the property. Only the Applestein Plaintiffs attempt to mount such argument, premised on the erroneous assertion that BNY Mellon has stated it has no interest in the Funds. *See supra* at 8. Not only is this statement plainly incorrect, it is also irrelevant. Under the terms of the Indenture and the Securities, BNY Mellon has a limited proprietary interest in the Funds (to recover its fees) and is otherwise holding them entirely for the benefit of the Exchange Bondholders, Ex. 1, §§ 3.1, 3.5(a), 5.5; Ex. 2, R-3, ¶ 2(e). Plaintiffs have not even attempted to (nor can they) explain why their interest in the Funds may be superior to that of the bondholders. Indeed, the Turnover Motions perfectly illustrate the inequitable consequences of

[12] As noted by the Second Circuit Court of Appeal in *NML Capital, Ltd. v. Republic of Arg.*, 699 F.3d 246, 263 (2d Cir. 2012), ordering a party to refrain from transferring payments made by the Republic under the Exchange Bonds differs from affirmatively ordering that the funds change hands. There, the Court of Appeals rejected the Republic's argument that the Injunctions violated New York trust or attachment law on the theory that they "execute upon" funds that do not belong to the Republic on the basis that "[n]othing in the Injunctions suggests that plaintiffs would 'execute upon' any funds, much less those held in trust for the exchange bondholders." *Id.* at 263 n.14. This is precisely what Plaintiffs are attempting to do here.

the Injunctions, which attempt to coerce Argentina into paying the Holdout Bondholders by prohibiting payments to innocent Exchange Bondholders who are entitled to their property.

## CONCLUSION

For the reasons stated above, the Euro Bondholders respectfully request that the Turnover Motions be denied.[13]

Dated: September 22, 2014
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Christopher J. Clark

Christopher J. Clark
Craig A. Batchelor
885 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
christopher.clark2@lw.com
craig.batchelor@lw.com

*Attorneys for Non-Parties Euro Bondholders*

[13] If this Court grants the Turnover Motions, the Court should stay that order or require Plaintiffs to post a bond pending appeal.