UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARIE LAURETTE DUSSAULT,

                        Plaintiff,

      -against-

THE REPUBLIC OF ARGENTINA,

                        Defendant.
------------------------------------------------------------------x

Case No. 06-CV-13085-TPG

**REPLY MEMORANDUM OF LAW OF PLAINTIFF MARIE LAURETTE DUSSAULT IN SUPPORT OF HER MOTION PURSUANT TO RULE 69(a) (1) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND SECTION 5225(b) OF THE NEW YORK CIVIL PRACTICE LAW AND RULES <u>FOR AN ORDER AGAINST BANK OF NEW YORK MELLON</u>**

HERZFELD & RUBIN, P.C.

Lydia Ferrarese
Malerie Ma
125 Broad Street
New York, New York 10004
(212) 471-8500

*Attorneys for Plaintiff*
*Marie Laurette Dussault*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

    I.    The Republic Has An Interest In The Amount Held By BNY ................................... 2

    II.   Principles Of Comity Do Not Apply ........................................................................... 7

    III.  The Foreign Sovereign Immunity Act Does Not Apply .............................................. 8

CONCLUSION .................................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Af-Cap Inc v. Republic of Congo*,
   383 F.3d 361 (3d Cir. 2004) ............................................................................................. 9

*Ayyash v. Koleilat*,
   957 N.Y.S.2d 574 (Sup. Ct. N.Y. Cty 2012), aff'd, 981 N.Y. S.2d 536 (1st
   Dep't 2014) ....................................................................................................................... 7

*DeBeck v. United States*, 2014 U.S. Dist. LEXIS 127088, at **52–55 (W.D. Tex.
   Aug., 20, 2014) ................................................................................................................. 5

*Dolco Invs. Ltd. v. Moonriver Dev., Ltd.*,
   No. 06 Civ. 12876, 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007) ................. 10

*Gucci Am., Inc. v. Weixing Li*,
   2014 U.S. App. LEXIS 17948 (2d Cir. 2014) ................................................................... 8

*In re Hanrahan v. Albany Cnty. Probation Dep't,*
   119 A.D.2d 334, 508 N.Y.S.2d 283 (3d Dep't 1986) ....................................................... 6

*Motorola Credit v. Uzan*,
   388 F.3d 39 (2d Cir. 2004) ............................................................................................... 8

*Municipal Art Soc. v. New York*, 137 Misc. 2d 832 (Sup. Ct. N.Y. Cnty. 1987) ...................... 5

*Peterson v. Islamic Republic of Iran*,
   627 F.3d 1117 (9th Cir. 2010) .......................................................................................... 9

*Presbyterian Church of Sudan v. Talisman Energy*,
   2003 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 19, 2003) .................................................. 7

*Republic of Argentina v. NML Capital, Ltd.*, 124 S. Ct. 2250 (2014) ......................................... 9

*Shaheen Sports, Inc. v. Tajmahal Sports Co.*,
   2012 U.S. Dist. LEXIS 36720 (Mar. 18, 2012) ................................................................ 7

*Wright v. Brockett*, 150 Misc. 2d 1031 (Sup. Ct. Bronx Cnty. 1991) ......................................... 5

*Yukos Capital S.A.R.L. v. Samaraneftgaz*,
   2014 U.S. Dist. LEXIS 2831 (S.D.N.Y. Jan.9, 2014) ...................................................... 8

**Statutes**

28 U.S.C. § 1609 .................................................................................................................... 9

28 U.S.C. § 1610 .................................................................................................................... 9

Fed. R. Civ. P., Rule 69 ..................................................................................................... 1, 7

N.Y. CPLR §105(i) ................................................................................................................ 2

N.Y. CPLR §5225(b) ......................................................................................................... 1, 2

Plaintiff Marie Laurette Dussault ("Dussault") respectfully submits this Reply Memorandum of Law in further support of her motion pursuant to Rule 69(a)(1) of the Federal Rules of Civil Procedure and section 5225(b) of the New York Civil Practice Law and Rules for an order to be issued against Bank of New York Mellon ("BNY"), the trustee for Defendant Republic of Argentina ("the Republic"), to either pay Plaintiff or deliver to Plaintiff funds deposited by the Republic with BNY in the amount to satisfy Plaintiff Dussault's judgment and post-judgment interest.

## PRELIMINARY STATEMENT

The Memoranda of Law in Opposition to Plaintiff's Motion filed by the Republic, BNY, and Non-parties Euro Bondholders[1] only confirm that Plaintiff's Motion should be granted. The main argument raised by the Republic, BNY and the Euro Bondholders is that the Republic has no interest in the sums held by BNY. This argument is baseless. The record is replete with evidence of the Republic's interest in such sum. In addition, as this Court has previously stated, the transfer made by the Republic was "illegal, and will not be made." June 27, 2014 Tr. 24:1-2.[2] Thus, the transfer was in violation of a court order, and, as suggested by this Court, the funds may be returned to the Republic. This further supports the fact that the Republic still has an interest in the amount.

The Republic also attempts to argue that Argentine law applies. The Euro Bondholders, in turn, maintain that English law applies. Both parties are wrong. In this case, BNY is subject to the jurisdiction of this court, a fact that nobody disputes—or could dispute. Plaintiff is attempting to enforce a judgment issued by this Court, and Federal Rule of Civil Procedure 69

---

[1] The Euro Bondholders are a group of investors that hold euro-denominated Exchange Bonds issued by the Republic.

[2] A copy of the transcript of the June 27, 2014 oral hearing held in *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), is attached as Ex. 3 to the Declaration of Christopher J. Clark dated September 22, 2014, No. 06 Civ. 13085, Ecf No. 77 ("Clark Decl.").

allows for enforcement of a money judgment in accordance with the procedure of the state where the court is located.  FED. R. CIV. P. 69.  New York courts have expressly stated they have the power to command a garnishee[3] present in the state to bring out-of-state assets under the garnishee's control into the state.   The Republic further maintains that the relief sought by Plaintiff contradicts principles of international comity.  The application of such principles, however, is in the court's discretion, and comity should not be used as a means to continue violating the applicable laws and this Court's Orders.  The Republic further argues that a transfer would violate the Foreign Sovereign Immunity Act ("FSIA"), because the assets are located outside the United States.  If the Court were to determine that the funds are located outside the United States, then the FSIA does not apply.  In this case, however, the funds were transferred electronically.  There are no physical assets located in Argentina; rather, the funds are located where BNY—the entity which has control of these funds—is located.   Indeed, BNY itself previously proposed transferring the sums—further supporting the fact that BNY has the power to do so—although it stated that it would likely face "baseless litigation" as a result.

## ARGUMENT

### I.      The Republic Has An Interest In The Amount Held By BNY

N.Y. C.P.L.R. 5225(b) provides that judgment creditors, like Plaintiff, may move for an order compelling a person in possession or custody of money or other personal property in which the judgment debtor has an interest to turn over such property.  Alternatively, judgment creditors may move for an order against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the

---

[3] The definition of garnishee pursuant to CPLR 105(i) is: a "garnishee" is a person who owes a debt to a judgment debtor, or a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest." N.Y. C.P.L.R. 105(i).

possession of such property ***or*** that the judgment creditor's rights to the property are superior to those of the transferee.

The record indisputably shows that the Republic continues to maintain an interest in the funds held by BNY. During the June 27, 2014 and July 22, 2014 hearings before this Court, it was made clear that the transfer was illegal and the transferred amount should be returned to the Republic. Specifically, this Court stated: [the money] "should be returned." July 22, 2014 Tr. 42:24.[4] The Court further stated:

> The reason the funds are in the hands of the Bank of New York was really an illegal move on the part of the Republic of Argentina. It was illegal. Now, is it possible to clear the decks and to eliminate the effects of that illegality? Is it possible to return the money to the republic?

July 22, 2014 Tr. 42:7-12.

Counsel for the Plaintiff in a related case responded affirmatively to the Court's question. July 22, 2014 Tr. 42:13. Counsel for BNY did not deny the possibility; rather, he merely noted the bank's possible exposure to litigation.[5] July 22, 2014 Tr. 43:8-13.

In a prior hearing on June 27, 2014, the Court had in fact clarified that:

> [A]ny attempt now to make a payment to the exchange bondholders, without complying with paragraph two, is illegal. It cannot be done and will not be permitted by this Court. […] Therefore, this payment cannot be made, and anybody who attempts to make it it [sic] will be in contempt of court by express term of this order. […] This payment is illegal and will not be made.

June 27, 2014 Tr. 23:18-24:2.

In response, BNY's counsel stated "we need to figure out what to do with it; either to keep it in that account, [or] to move it to an account in New York."[6] BNY's counsel further

---

[4] A copy of the transcript of the July 22, 2014 oral hearing held in *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), is attached as Ex. A to the Declaration of Evan K. Farber dated September 22, 2014, No. 06 Civ. 13085, Ecf No. 75.

[5] It should also be noted that BNY's counsel negotiated a draft order contemplating the return of the sums to the Republic, and halted the negotiations when threatened with litigation by bondholders.

[6] Counsel for BNY further stated in a separate statement before the High Court of Justice Chancery Division that the "Trustee acknowledged this [i.e. the possibility to transfer the sums to New York] as an option." Ex. 6 to Clark

3

suggested filing an interpleader action.  June 27, 2014 Tr. 32:16-22.

> The court responded, after stating that there was no need for an interpleader action:
>
> The Republic had no business making any payment to your bank in the way and for the purpose that it did.  It was improper. . . . I would think that the money should simply be returned to the Republic, simple as that.  *They had no business paying*.  And, obviously I imagine you like a deposit in your bank of a few hundred million dollars, and that's great, but it *shouldn't even be there*. […] *The money should be returned. It should never have been paid, and it should be returned.*

June 27, 2014 Tr. 32:24-33:1; 33:7-14 (emphasis added).

In a letter addressed to this Court, counsel for BNY further stated that ordering the Trustee to return the funds to Argentina could expose BNY to litigation risk, "however baseless" (Ex. 11 to Clark Decl.), once again supporting the fact that Argentina has an interest in the funds.

In an attempt to argue that the Republic no longer has an interest in the sums held by BNY, the Republic cites, among other things, a court order in a related case issued on August 6, 2014 stating that BNY shall retain the Funds in its account pending further order of this Court.[7] Similarly, BNY misrepresents this Court's August 6 Order by arguing that the Court recognized the Republic's lack of interest in the Funds.  Nowhere in that Order—or anywhere else on the record—did the Court find that Argentina lacked any interest in the funds.  Rather, the Court merely conceded that BNY's withholding of the funds would not turn BNY into an aider and abettor of the Republic's illegal payment.  Nowhere in the Order is it stated that the Republic has no interest in the sums or that the sums will never be paid back to the Republic.  Indeed, the same Order stated that the payment by Argentina to BNY was illegal.  Accordingly, since the

---

Decl. ¶ 19 p. 9.  BNY further recognized that the Republic maintained an interest in the funds when it sought an order of this Court requesting that the funds be returned after the Republic communicated wiring instructions for such payment and when the Court determined that BNY would not be held liable for such transfer.  *See* BNY Memorandum of Law in Support of Clarification at 2, 1:09-cv-0170-TPG (Dkt. 359).

[7] A copy of the August 6 Order from *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), is attached as Ex. A to the Declaration of Carmine Boccuzzi dated September 22, 2014, No. 06 Civ. 13085, Ecf No. 78.

transaction between the Republic and BNY has been held to be illegal, it is void *ab initio*.[8]  *See, e.g., DeBeck v. United States*, 2014 U.S. Dist. LEXIS 127088, at **52–55 (W.D. Tex. Aug. 20, 2014) (finding illegal transfer is void and transferor remains "true owner" of the property at issue); *Wright v. Brockett*, 150 Misc. 2d 1031, 1038 (Sup. Ct. Bronx Cnty. 1991) (agreement to make illegal payment is void under long-standing New York law); *Municipal Art Soc. v. New York*, 137 Misc. 2d 832, 833 (Sup. Ct. N.Y. Cnty. 1987) (finding illegal transaction is null and void).  Accordingly, as the transfer is void, the funds being held by BNY remain the property of the Republic and are subject to turnover to satisfy Plaintiff's judgment.

      The Republic further cites to the Indenture regulating Exchange Bond Offers arguing that pursuant to the terms of the Indenture, BNY holds the sum on behalf of the Euro Bondholders.[9]  The Indenture, however, does not apply to illegal transfers of money.   Indeed, section 5.2 of the Indenture specifically provides that "no provision of the Indenture shall require the Trustee to do anything which may be illegal or contrary to any applicable law or regulation, or incur any liability in the performance of any of its duties."[10]   Clearly, transferring the money to the Euro Bondholders would be a violation of this Court's order, illegal, and cannot be carried out by the Trustee.  Because the transfer was illegal and the money cannot be transferred to the Euro Bondholders legally, the Republic maintains an interest in the sums.

      In its opposition, BNY further argues that Plaintiff can neither show that the Republic is entitled to possession of the Funds nor that the Republic holds any right superior to that of the

---

[8] As this Court has already held Argentina's transfer to be illegal, Plaintiff respectfully requests that the Court further declare the transfer void.

[9] Notably, following the Republic's filing of the opposition in this case, the Republic formally requested the immediate resignation of BNY as trustee, and threatened to remove BNY in the event that BNY did not voluntarily withdraw from its position.  If removed from its position, the Trustee would not have any authority to transfer the Republic's funds to bondholders.

[10] In addition, sections 11.3 and 11.4 of the Indenture regulate restitution of funds to the Republic when such funds are not paid to the Exchange Bondholders thus further supporting the argument that the Republic maintains an interest in the funds.  Ex. 1 to Clark Decl. §§ 5.2, 11.3–11.4.

Trustee.  As discussed earlier, the record is replete with statements that the funds should be returned to the Republic, thus supporting Plaintiff's argument that the Republic is entitled to possession.  Because the Republic is entitled to possession, it is not necessary for Plaintiff to show that Plaintiff's rights to the property are superior to those of the party who currently possesses the property.

Even *assuming arguendo*, though, that the Republic is not entitled to the property it attempted to illegally dispose of, Plaintiff is a judgment creditor, and as such her interests are superior to the interest of contractual parties to whom the payment made was illegal.[11]

The Euro Bondholders rely on *In re Hanrahan v. Albany Cnty. Probation Dep't*, 119 A.D.2d 334 (3d Dep't 1986), for the proposition that once a judgment debtor surrenders the money to a third-party transferee, the debtor loses any interest in the money.  The facts of that case, however, are the opposite of those in the present case.  The debtor in *Hanrahan* had effectuated a transfer as part of a plea bargain providing restitution mandated pursuant to applicable penal laws.  The transferee, the probation department, paid certain debtors a *pro rata* share of the restitution fund.  The *Hanrahan* court found that the County Court was the only body authorized to order the distribution of the funds under the applicable Penal Law.  Further, the transfer there was mandated by the Court.  In stark contrast, this court expressly prohibited the transfer by the Republic and held it illegal.  Moreover, in the present case, the Court ordered the transferee not to pay the Euro Bondholders, and therefore, the transfer has not been completed by the Republic, which thus retains an interest or a right to possession in the funds.

---

[11] It should also be noted that Plaintiff is not seeking a transfer of the entire amount held by BNY, a sum in excess of $500 million; rather, Plaintiff only seeks the amount due to the Plaintiff pursuant to her judgment of approximately $8 million plus interest. Therefore, BNY's argument that a transfer would deprive BNY of its right to collect its costs and expenses, and other unspecified rights, in contravention of the Fifth Amendment has no basis. Plaintiff's rights—i.e. a judgment creditor's rights are superior to those of BNY deriving from an illegal act of the Republic, but in this case Plaintiff's satisfaction would still allow BNY to recover sums due to it, if any.

## II. Foreign Laws And Principles Of Comity Do Not Apply

It is undisputed that this court has jurisdiction over BNY.  "A New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee."  *Shaheen Sports, Inc. v. Tajmahal Sports Co.*, 2012 U.S. Dist. LEXIS 36720 at *7 (S.D.N.Y. Mar. 18, 2012) (quoting *Koehler v. Bank of Bermuda Lts. (Koehler III)*, 577 F.3d 497, 499 (2d Cir. 2009)).

In an attempt to circumvent this Court's undisputed jurisdiction over BNY, the Republic argues that Plaintiff's motion is precluded by principles of international comity because Plaintiff's motion contravenes Argentine law.  However, Argentine law simply does not apply here.  Plaintiff was issued a judgment by this Court and Federal Rule of Civil Procedure 69 expressly allows for enforcement of a money judgment in accordance with the procedure of the state where the court is located.  Moreover, Plaintiff is seeking a motion directed at a New York entity, which is indisputably subject to the jurisdiction of this court.

In addition, comity is a "fundamentally discretionary act and is not obligatory." *Presbyterian Church of Sudan v. Talisman Energy*, 244 F. Supp. 2d 298, 342 (S.D.N.Y. 2003) (citing *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 454 (2d Cir. 2001)). Therefore, the Court has no duty to apply comity principles, despite the Republic's attempts to argue otherwise.

Furthermore, the three cases cited by the Republic are inapposite to the idea that principles of international comity should prevail.  In *Ayyash v. Koleilat*, 957 N.Y.S.2d 574 (Sup. Ct. N.Y. Cnty. 2012), *aff'd*, 981 N.Y.S.2d 536 (1st Dep't 2014), the plaintiff tried to enforce a Lebanese judgment in New York. The court there found that neither the State of New York nor the United States had "any discernable connection" to the Lebanese judgment or the underlying defendants and simply required the parties to comply with requirements of the Hague

7

Convention, of which the United States is a party, in seeking discovery.  Similarly, in *Motorola Credit v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004), the Second Circuit noted that the District Court did not adequately support its decision to impose an equitable remedy and pierced the corporate veil of several companies without a sufficient factual basis.  Clearly, these cases do not apply here.  Likewise, in *Gucci Am., Inc. v. Weixing Li*, 2014 U.S. App. LEXIS 17948 (2d Cir. 2014), also cited by the Republic, the Court in fact found that the extension or denial of comity is within the court's discretion.   By contrast, in a case similar to the present case, the Southern District of New York squarely rejected a debtor's argument that a turnover order would offend principles of international comity.  *See Yukos Capital S.A.R.L. v. Samaraneftgaz*, 2014 U.S. Dist. LEXIS 2831 at **13–14 (S.D.N.Y. Jan. 9, 2014) (granting a motion for turnover after Plaintiff prevailed in an arbitration proceeding before the International Chamber of Commerce in New York).

Similarly, the Euro Bondholders erroneously argue that English law applies as the law selected by the Republic to regulate its securities offerings to the Euro Bondholders for which BNY is the trustee.  This argument also is baseless.  BNY is a New York entity and subject to this Court's jurisdiction.  Plaintiff has a judgment issued by a New York court, and is seeking to enforce it pursuant to New York laws and procedure, thus clearly providing for the application of New York law.  The transfer by the Republic to BNY, as this Court has held, was in violation of the Court's orders and illegal.  Those funds held by BNY, therefore, were not properly or validly deposited and never came within the ambit of the Indenture.

### III.     The Foreign Sovereign Immunity Act Does Not Apply

The Republic further argues that an order for turnover would violate the Foreign Sovereign Immunity Act (FSIA) because the funds owed to Argentina are located outside the United States. This argument is totally meritless.  Specifically, if this Court were to accept that

8

the funds are located outside the United States, then according to the United States Supreme Court decision in *Republic of Argentina v. NML Capital, Ltd.*, 124 S. Ct. 2250 (2014), the FSIA cannot apply.  In *NML Capital, Ltd.*, the Supreme Court explicitly stated that the FSIA only applies to "foreign-state property 'in the United States.'" *Id.* at 2257.  *See also* 28 U.S.C. §§ 1609–1610 (identifying "property *in the United States* of a foreign state" as the subject of the statute) (emphasis added).

Moreover, even if the funds are located in the United States, various exceptions to the FSIA would apply and the Republic would still be unable to claim protection under that Act. Under 28 U.S.C. § 1610(a)(1), immunity does not attach if the foreign state waives its immunity. Here, the Republic has made a very broad waiver of sovereign immunity.[12]  Furthermore, the "commercial activity" exception under 28 U.S.C. § 1610(a)(2) would also apply thereby preventing the Republic from claiming any protection under the FSIA.

In any event, in this case there are no physical assets located in Argentina, the sums are intangible assets in an account and are electronically transferrable.  Numerous courts have found that attaching a *situs* to intangible property is "necessarily a legal fiction." *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371 (3d Cir. 2004) (citing to *U.S. Industries, Inc. v. Gregg*, 540 F.2d 142, 151 n. 3 (3d Cir. 1976)).  Indeed, BNY counsel represented to this Court that the sum could be transferred.  June 27, 2014 Tr. 32:16-22.  Furthermore, although the Republic cites to *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117 (9th Cir. 2010) arguing that the Court denied execution over property located in France, its reliance is misplaced.  In *Peterson*, the

---

[12] To the extent that [the Republic] or any of its revenues, assets or properties shall be entitled ... to any immunity from suit ... from attachment prior to judgment ... from execution of a judgment or from any other legal or judicial process or remedy, ... [the Republic] has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the [FSIA] to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment).… *NML Capital, Ltd.*, 134 S. Ct. at 2253 fn.1 (*quoting* 1994 FAA) (emphasis added).

Court analyzed the right to attach a payment owed to the debtor by a French corporation. The Court found that a right to payment is intangible, and that the *situs* of the right to payment is the location of the debtor. Because the debtor was located in France, the Plaintiff was denied attachment. In this case, however, BNY is located in New York and the case cited by the Republic supports Plaintiff's argument that the sums are located in New York for purposes of this motion. Similarly, in *Dolco Invs. Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 269 (S.D.N.Y. 2007), the Court found the location of an intangible, especially a bank account, is a "metaphysical question" and, citing to *Yayasan Sabah Dua Shipping SDN BHB v. Scandinavian Liquid Carriers, Ltd.*, 335 F. Supp. 2d 441, 448 (S.D.N.Y. 2004), where the court applied a pragmatic rule of reason to hold that a Cayman Island branch was part of a New York bank, found that the bank who had ultimate control of the release of the funds would determine the location of such funds. In this case, BNY has control of these funds, and therefore the funds are located in New York for purposes of the present motion.

## CONCLUSION

For the reasons stated, Plaintiff Dussault respectfully requests that the Court issue an order in favor of the Plaintiff ordering BNY to pay the Plaintiff from the funds held on behalf of the Republic in an amount equal to Plaintiff's judgment and post-judgment interest.

Dated: New York, New York
      October 9, 2014                      Respectfully submitted,
                                               HERZFELD & RUBIN, P.C.

                                               By:   */s/ Lydia Ferrarese*
                                                   Lydia Ferrarese
                                                   Malerie Ma
                                             125 Broad Street
                                             New York, New York 10004
                                             (212) 471-8500
                                             lferrarese@herzfeld-rubin.com
                                             *Attorneys for Plaintiff Marie Laurette Dussault*